UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No.  S1- 4:13CR0443 (SNLJ/TIA) ) |
| ALAN JUNG, | ) ) |
| Defendant. | ) |

## GOVERNMENT'S POST-HEARING MEMORANDUM

COMES NOW, the United States of America, by and through Richard G. Callahan, United States Attorney for the Eastern District of Missouri, and Allison H. Behrens, Assistant United States Attorney for said District, and for its response post-hearing memorandum, states as follows:

1. Defendant Alan Jung ("Defendant") filed a motion to suppress evidence and statements. District Court Docket ("DCD") 45. The Government filed a response. DCD 65. On June 24, 2014, the Court held an evidentiary hearing. DCD 67. At the hearing, the Government presented two witnesses. DCD 68. Following the hearing, the Court granted both parties additional time in which to file post-hearing memoranda. The Government adopts and incorporates its Response to Defendant's Motion to Suppress Evidence herein, *in toto*.

2. In the Government's Response to Defendant's Motion to Suppress Evidence, the Government set forth an extensive statement of facts. DCD 65, p. 1-4. The two witnesses presented at the evidentiary hearing testified consistently with those facts. Those facts are not in dispute and will not be revisited here.

3.  **_Consent_**.[1]  The officers lawfully entered Defendant's residence pursuant to his consent.  The Eighth Circuit has held that a defendant's act of stepping aside to let the officer into the residence constituted an implied consent to enter.  *United States v. Curnett*, 123 Fed. App'x 733 (8th Cir. 2005); *United States v. Turbyfill*, 525 F.2d 57 (8th Cir. 1975) (There was no error in the determination of the district court that the action of Church in the opening of the door and stepping back constituted an implied invitation to enter."); *United States v. Bosch*, 2007 WL 551617 (E.D.Mo.).  In his post-hearing memorandum, Defendant does not challenge the entry into the residence by the officers.[2]

4.  **_Lawful Warrantless Arrest of Defendant_**.  When the officers entered the residence to talk with Defendant, he proceeded to walk toward the dryer which was just inside the front door.  Defendant reached toward a firearm resting on top of the stack of shirts.  Postal Inspector Budt yelled "Gun!" and Postal Inspector Brassel grabbed Defendant and immediately placed him in handcuffs for officer safety.  Placing Defendant into handcuffs at that point in time was lawful as the officers were presented with serious danger and needed to control the scene to protect their safety. *United States v. Martinez*, 462 F.3d 903, 907-08 (8th Cir. 2006).

Furthermore, although the Postal Inspectors did not specifically use the words "you are under arrest," Inspector Brassel testified at the hearing that he was placing Defendant under arrest

---

[1] In addition to entering Defendant's residence pursuant to his voluntary consent, the postal inspectors also had the right to enter his residence because of his request to get dressed.  *United States v. DeBuse*, 289 F.3d 1072, 1074 (8th Cir. 2002). *See also United States v. Gwinn*, 219 F.3d 326 (4th Cir. 2000).

[2] At the hearing, defense counsel asked both of the Government's witnesses about their entry into Defendant's apartment.  Specifically, he referenced the existence of a video of their entrance, suggesting that this video may contradict the inspectors' testimony.  Attorneys are not permitted to ask questions unless a good-faith basis for the question exists.  If, in fact, a video exists contradicting the testimony of the officers, the Government requests that this Court direct Defendant to produce it to the Court for review.

at that time. Certainly, the officers had probable cause to conduct a warrantless arrest of Defendant. *United States v. Allen*, 713 F.3d 382, 386 (8th Cir. 2013). In his post-hearing memorandum, Defendant does not challenge the lawfulness of the Defendant's warrantless arrest.

5. ***Lawful Seizure of Firearm on Top of Dryer.*** The postal inspectors lawfully seized the firearm from on top of the dryer under the plain view doctrine. *United States v. McManaman*, 673 F.3d 841, 848 (8th Cir. 2012). The inspectors were lawfully in a position to observe the firearm after they entered Defendant's residence with his consent. Further, the incriminating character of the firearms was immediately apparent, as Defendant had threatened the day before the commit a mass murder. The firearm provided the means by which to carry out that threat. *United States v. Green*, 560 F.3d 853, 858 (8th Cir. 2009); *United States v. Murphy*, 261 F.3d 741, 744 (8th Cir. 2001). Again, Defendant does not challenge the lawfulness of the seizure of this firearm in his post-hearing memorandum..

6. ***Protective Sweep***. After the officers observed Defendant reaching toward a firearm, they immediately placed Defendant in handcuffs. Inspector Brassel testified that he took Defendant to the middle of the living room while Inspector Budt conducted a brief sweep of the residence to ensure no other individuals were in the residence who could harm the inspectors. This sweep, as Inspector Budt described it, took only a few minutes (most of which was spent rendering the many firearms safe that he found in plain sight) and Inspector Budt testified that he only looked in the areas in which a person could be hiding. *All* of the firearms he seized were in plain sight.

7. In *Maryland v. Buie,* 494 U.S. 325, 3277 (1990), the Supreme Court held that, in order to protect themselves from harm, law enforcement officers may, "as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately

3

adjoining the place of arrest from which an attack could be immediately launched." *Buie*, 494 U.S. at 334. The protective sweep cannot be "a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found. The sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger…." *Id*. at 335-36.

In this case, Postal Inspectors Brassel and Budt were responding to Defendant's residence because he had made a threat to commit a mass murder at a post-office. Upon lawfully entering the Defendant's residence, they had probable cause to arrest Defendant. Right upon entering the residence, the Inspectors saw Defendant reach toward a firearm in plain view, which was later determined to be fully loaded. The Inspectors placed Defendant in handcuffs and testified that he was being placed under arrest at that time. Thus, according to *Buie*, at that time the inspectors were permitted to look into spaces immediately adjoining the place of arrest from which an attack could be immediately launched. *Buie*, at 334. Inspector Budt conducted a cursory search of the two bedrooms which opened to the right of the short four-foot hallway in which they were standing. These bedrooms adjoined the place of arrest and certainly were places from which an attack could be immediately launched.

The protective sweep of the two adjoining bedrooms in the small apartment is consistent with *Buie*. In *Buie*, the officers arrested Buie as he was emerging from the basement. Even though Buie was arrested and placed in handcuffs, officers nonetheless entered the basement "in case there was someone else" down there. *Buie*, 494 U.S. at 328. There, they found evidence in plain sight that they seized. *Id*. Certainly, if the basement is considered "adjoining" the place of arrest, then the two bedrooms in this small apartment are adjoining the small hallway where Defendant was placed under arrest. Inspector Budt did not conduct a thorough search of the residence. He merely looked in each bedroom to ensure there were no other occupants. The

4

protective sweep of the residence under these circumstances was permissible under the Fourth Amendment.

8.      In this case, the officers had reasonable suspicion to support safety concerns that justified conducting a cursory search of Defendant's apartment to ensure the safety of whomever else might have been in the house and to ensure their safety.   That reasonable suspicion was based upon the fact that Defendant had made a threat to his former supervisor the day before to commit mass murder.   In addition, Inspector Brassel testified that he had previous contact with Defendant and concluded, based upon that contact, that Defendant may be mentally unstable.   Defendant escalated the threat of danger when he reached toward a fully-loaded firearm as the Inspectors entered his apartment.   Further adding to the level of danger was the presence of a large number of firearms, all loaded, which were strewn about the residence.   Not only were the officers justified in conducting a protective sweep of the premises under these circumstances, "it could be argued that they would have been derelict in their duties had they not conducted a protective sweep of the residence."   *United States v. Kissee*, 2007WL1726540 (W.D.Mo.).

9.      Defendant argues in his post-hearing memorandum that the inspectors should not have been able to conduct the protective sweep because once Defendant was in handcuffs there was no safety issue for the officers.   The fact that Defendant was placed under arrest immediately before the protective sweep was performed does not undermine the ability of officers to make a protective sweep of the apartment.   *United States v. Williams*, 577 F.3d 878, 882 (8th Cir. 2009) ("Although [the defendant] was handcuffed before the search occurred, a valid protective sweep may be conducted within a reasonable period of time after the subject of the warrant has been arrested).

10. Defendant also argues that the Inspectors were not permitted to conduct a protective sweep because they did not establish that they reasonably believed other individuals were present in the apartment. As stated above, under *Buie*, when officers make an arrest in a residence, they are permitted to search the area immediately adjacent to the arrest location. The two bedrooms were immediately adjacent.

To the extent that the Court concludes otherwise, the cursory search of Defendant's residence still was not unconstitutional. The Inspectors testified that they had no way of knowing whether Defendant lived at the residence by himself or whether any other individuals were present in the residence who might have access to other firearms. They attempted to check personnel records but gained no insight. They arrived at the residence at 7:15 a.m. at a time when individuals would likely be home and still in bed. The residence was an apartment in a complex of many apartments.

Law enforcement officers are not required to know with certainty that another individual is present before the officers can conduct a protective sweep. *Williams*, 577 F.3d at 880 (rejecting the defendant's argument that a protective sweep was pretextual because police had observed the only occupants of the house and explaining that "[w]hile hindsight eventually reveals that the officers had already encountered all of the occupants of the home before conducting the protective sweep, that information was not apparent to the officers when they initiated the sweep); *United States v. Boyd*, 180 F.3d 967, 977-78 (8th Cir. 1999) (noting that law enforcement officers have no way of knowing how many people are present when they enter a house). *See also United States v. Coleman*, 700 F.3d 329, 336-37 (8th Cir. 2012) (trooper justified in performing a protective sweep of motor home to make sure no passengers were hiding). In *Kissee,* the fact the officers did not know if there were other individuals on the premises who might have exacerbated the obvious risk

already present, did not detract from the lawfulness of their protective sweep. *Kissee*, 2007WL1726540 at *7.

11. The question under the Fourth Amendment is whether a search was "reasonable." *Bruton*, 647 F.2d 818 (8th Cir. 1981). "This standard is flexible, not absolute. In deciding whether it was violated, we should try to put ourselves in the position of the officers [at the time]. We should not, in the quiet of our chambers, look with eagle's eyes to spy out flaws in the officers' reasoning after the fact." *Id*. at 823; *United States v. Hoyos*, 892 F.2d 1387, 1397 (9th Cir. 1989) ("We must be careful not to use hindsight in limiting the ability of police officers to protect themselves as they carry out missions which routinely incorporate danger). Here, Defendant had made a threat to commit mass murder. He was believed to be mentally unstable. He reached toward a firearm in the presence of the inspectors. These circumstances establish that the cursory sweep of the two bedrooms adjacent to the area of arrest was certainly reasonable.

12. ***Seizure of Firearms In Plain Sight During Protective Sweep.*** While conducting the protective sweep, and looking only in areas in which a person could reasonably be found, Postal Inspector Budt observed numerous firearms throughout the residence in plain view. He immediately seized each of those firearms and rendered them safe. Once he rendered them safe, he placed them in the hallway in front of the dryer. He located thirteen firearms throughout the residence, all of which were loaded. The firearms were lawfully seized pursuant to the plain view doctrine. *Boyd*, 180 F.3d at 976.

13. <u>**Statements**</u>. The Government stands on its original response

# IV.
# CONCLUSION

For the reasons stated in its initial response and this post-hearing memorandum, the Government respectfully requests that the Court deny Defendant's Motion to Suppress. Specifically, the Government requests that the Court find that the firearms seized from Defendant's residence be declared admissible at trial. Further, the Government requests that the Court find that the voluntary statements made by Defendant on October 4, 2013 be admissible at trial.

Respectfully submitted,

RICHARD G. CALLAHAN
United States Attorney

*s/Allison H. Behrens*
Allison H. Behrens, #38482MO
Assistant United States Attorney
111 South 10th Street
St. Louis, Missouri 63102
(314) 539-2200

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the above and foregoing was served by way of this Court's electronic filing system this ___25th___ day of July 2014:

Mr. George Restovich

*s/Allison H. Behrens*
ALLISON H. BEHRENS, #38482MO
Assistant United States Attorney