UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
|        ) | |
|        Plaintiff, ) | |
|        ) | |
| v.    ) | No.   4:13CR443 SNLJ |
|        ) | |
| ALAN R. JUNG, ) | |
|        ) | |
|        Defendant. ) | |

**MEMORANDUM AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

The above matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(B).  The Defendant filed a motion to suppress statements and evidence and the Government filed a response thereto.  On June 11, 2014, the undersigned ordered that the evidentiary hearing be held on June 24, 2014.  Based upon the evidence adduced at the hearing on the motion to suppress, the undersigned makes the following finds of fact and conclusions of law:

**Findings of Fact**

Curtis Brassel is a United States Postal Inspector.  On October 4, 2013, Inspector Brassel was assisting Postal Inspector Jeff Walters in the investigation of Alan Jung.  Mr. Jung was suspected of making a threat to kill numerous people at the Post Office in St. Charles, Missouri. According to the affidavit filed by Inspector Walters in this case in support of a complaint, Mr. Jung was a former employee of the St. Charles Post Office having been terminated three months earlier. He was terminated because he accused people at the post office of "poisoning" his salt shaker. Postal Inspector Brassel had investigated some of Mr. Jung's allegations, and believed Mr. Jung was mentally unstable.  On October 3, 2013, Defendant approached a former supervisor while she was

having lunch and asked her about a former co-worker whom he said was poisoning him. He then screamed at the supervisor, "you are a bitch and I will get you and all of them." When the supervisor asked what he meant he said "I will come to the post office and kill all of them." Because of the specific nature of the threat Inspector Walters, who had been assigned the case, met with an Assistant United States Attorney on October 4, 2013. Their plan was to file a complaint with an United States Magistrate Judge and arrest the Defendant before he could act on his threat. In the interim, Inspector Brassel and another postal inspector were to go to Mr. Jung's house to question and/or detain him in order to make sure that he did not carry out his threat.

Pursuant to this, Inspector Brassel and another postal inspector, Brian Budt, went to Defendant's apartment at 1408 Lockwood in St. Peters, Missouri. They proceeded up the stairs to Defendant's apartment and Inspector Brassel knocked on the door. After approximately fifteen to twenty seconds, the inspectors heard a voice asking them who was at the door. Inspector Brassel replied, "Postal Inspectors" and Defendant immediately opened the door to the apartment. He stated to them immediately, without being asked any questions, "I didn't threaten her." The inspectors explained to the Defendant that they needed to talk to him about the alleged threats he made to his supervisor and said that they wanted him to go with them to the office in order to be questioned about the matter. The Defendant said he expected that they would want to talk to him. Defendant opened the door widely while stepping back or to the side to let them in. The inspectors felt they were being invited into the apartment. They stepped across the threshold and the Defendant closed the door and stated that he wanted to get dressed. They told him that was fine and he started to reach for a shirt in a laundry basket next to him in the laundry room of his apartment which was right next to the front door. As he did so, Inspector Budt noticed what appeared to be a loaded .45 caliber

automatic pistol in the laundry basket in which Defendant was reaching. Inspector Budt informed Inspector Brassel of the weapon and, because he believed the Defendant was reaching for the gun, grabbed the gun while Inspector Brassel handcuffed the Defendant. When the Defendant observed Inspector Budt grab the gun, he said, "I brought the gun to the door for my protection, but put it down when I determined that you were postal inspectors. I forgot the gun was there."

The inspectors did not know whether or not the Defendant was alone in the apartment or lived with someone. Because of this and because they believed the Defendant reached for a loaded firearm, they determined that they needed to do a protective sweep of the apartment. They felt it was prudent in view of the fully loaded firearm and ammunition in the laundry basket.

In conducting a protective sweep of the apartment, Inspector Budt checked every room in the residence and checked closets and any other place an individual may be hiding to verify there was no one in the residence. During this time, he was able to see in plain sight numerous firearms and boxes ammunition in the apartment. In all, he seized about ten (10) firearms, several of which were semi-automatic handguns. In doing this he seized only the weapons that were in plain view. He did not look into any boxes, drawers, or under any mattresses, box springs, pillows, etc. Because to this, he was unsure whether all of the weapons in the residence had been found and, in fact, was fairly certain there were still firearms in the apartment. During the time Inspector Budt was doing the protective sweep, Defendant was in handcuffs in the living room of the apartment. He was not allowed to sit down on the couch because Inspector Brassel, who was with him, could observe a loaded firearm sitting on the couch.

After the firearms were collected, Defendant was conveyed to the postal inspector's office where he was advised of his rights but he refused to make a statement.

**Conclusions of Law**

A.	Entry into Defendant's Apartment

Based upon the above findings the undersigned concludes that the entry by Brassel and Budt into Defendant's apartment was consented to by the Defendant and therefore, the initial entry into the apartment was lawful.

In United States v. Turbyfill, 525 F.2d 57 (8th Cir. 1975), a Kansas City police officer and a Secret Service agent went to the defendant's house to investigate a counterfeiting matter. They rang the doorbell and an individual answered the door. The officers identified themselves and the defendant opened the inside door a few feet and stepped back. After the defendant did this, the officers opened an unlocked screen door and entered the house. After entering the house, they immediately smelled a strong odor of marijuana and observed other marijuana in the room. Eventually, the officers arrested both individuals in the house and charged them with possession of marijuana with intent to distribute it. In upholding the entry into the premises and a later seizure of the marijuana as lawful the court stated as follows:

> Turbyfill says, however, that even if Church had authority to permit others to enter the dwelling, nothing done by Church was an invitation to the officers to enter the house and thus be in a position to see the marijuana which was first observed. An invitation or consent to enter a house may be implied as well as expressed. There was no error in the determination of the district court that the action of Church in the opening of the door and stepping back constituted an implied invitation to enter. The entry of the officers was lawful. Once in the house they were justified in seizing the marijuana which was in plain view in the shoe box on the table.

525F.2d 59 (8th Cirl. 1975).

In United States v. Curnett, 123 Fed. Appx. 733 (8th Cir. 2005), the court was again faced with a situation where a police officer went to the door and told the defendant ant he had to talk to the defendant. The defendant stood aside as if to allow the agent to enter, and the agent did enter the house. In upholding this procedure as lawful, the court stated as follows:

> Finally, Curnett argues that the district court made an error in law in finding that Curnett's act of stepping aside to let Chief Poletis into the home constituted an implied consent to the entry. We disagree. We have held that nearly identical actions constitute implied consent to entry. . . see also United States v.Smith, 973 F.2d 1374, 1376 (8th Cir. 1992) (finding consent by a resident who stepped aside, motioned officers in, even though the officers had previously drawn their weapons.) Because Curnett's actions were sufficient to allow a reasonable officer to infer consent to enter, we find the entry was lawful. Consequently, the evidence seized from Curnett's home was not the fruit of an unlawful search.

123 Fed. Appx. 733, 735.

Based upon the above law the undersigned concludes that Brassel and Budt's entry into the apartment was lawful and justified by implied consent.

Brassel testified that the opening to the apartment was very narrow, and that neither he nor Budt could have entered the apartment had the Defendant not opened the door widely immediately after the agents said they needed to talk to him and stepped back or aside. He allowed them to enter the apartment, and they were not required to push open any doors or to touch anything upon entry. He closed the door after they entered. Further, Defendant made no complaint about their entry, and merely asked if he could get dressed prior to going with them for questioning. Thus, under the circumstances the undersigned concludes that in this case as in Turbyfill and Curnett above, the actions of the Defendant were more than sufficient to imply consent on the Defendant's behalf to allow the agents to enter the apartment.

B.          The Defendant's Arrest and the Seizure of the Gun in the Laundry Basket

5

Based on the above facts the undersigned concludes that arrest of the Defendant was based on probable cause and therefore was lawful. Police officers may arrest a person without a warrant if they have probable cause to believe that the person arrested has committed a crime. Gerstein v.Pugh, 420 U.S. 103 (1975); Beck v. Ohio, 379 U.S. 89 (1964). Probable cause is a fluid concept turning on the assessment of probabilities in a particular factual context not readily or even usefully reduced to a neat set of legal rules. Illinois v. Gates, 462 U.S. 213, 232 (1983). In the context of a warrant-less arrest, all that need be shown is a "fair probability" that a crime has been committed and that the Defendant committed it. See Illinois v. Gates, *supra*.

Based on the above the undersigned concludes that there was ample probable cause to arrest the Defendant. The agents were collectively aware that the Defendant had been terminated from his employment three months before the alleged threat was made to one of his supervisors. They were also aware that he was accusing them of poisoning him, and that was the reason for his absence from work and his termination. They likewise were aware that on just the previous day the Defendant has told one of his supervisors that "I will get you and all of them." He stated that he will come to the post office and "kill all of them". Based on the above, the undersigned concludes that at the time the agents entered the apartment they were aware that the Defendant had made a threat which violated 18 U.S.C. § 115 as that is defined in 18 U.S.C. § 1114. Therefore, they were aware that this Defendant intended to commit mass murder at the post office of his fellow employees and therefore, they had probable cause to arrest him for this offense. Further, having entered the premises lawfully on invitation of the Defendant they observed in plain view the Defendant reaching for a loaded firearm. They were justified in seizing this weapon, not just for their own protection, but because it was possible evidence to be used in the offense of threatening to kill postal

6

employees. Further, it was in plain view in an area that the officers were lawfully located, after having been allowed admittance to the apartment by the Defendant. See Coolidge v. New Hampshire, 403 U.S. 443 (1971).

C.         Protective Sweep

The Defendant alleges several reasons why the protective sweep is not justified and that the weapons should be suppressed. The undersigned, however after having carefully reviewed the testimony and exhibits as well as the law on this point finds that the Government's arguments are persuasive and therefore recommends and finds that the firearms and ammunition not be suppressed.

As stated in the Government's brief, the seminal case in this matter in Maryland v. Buie, 494 U.S. 325 (1990). In Buie, *supra*, six police officers from the Prince Georgia County Sheriff's Office arrived at a home to arrest a Defendant for bank robbery. After entering the home, they found the defendant walking out of the basement of his house. They arrested him while coming out of the basement, placed him in handcuffs and detained him. Thereafter, they did a cursory search of the basement area for their protection and observed in plain view a red track suit which was seized for evidence. The track suit was later identified as similar to one being worn by the robber. In upholding the protective sweep, without any further reasonable suspicion the court stated as follows:

"We also hold that as an incident to the arrest the officer could as a precautionary matter and without probable cause or reasonable suspicion look in closets and other space immediately adjoining the place of arrest from which an attack could be immediately launched." 494 U.S. 4324- 43. The court went on to state that should any other areas be searched, reasonable suspicion would have to be

7

shown that the other areas may harbor individuals dangerous to the officers. The court did also emphasize that the search authorized was not a full search of the premises but could only extend only to a cursory inspection of spaces where an individual might hide such as a closet or under a bed.

As to whether or not bedrooms adjacent to where a defendant was located when arrested in a hallway may be searched without reasonable suspicion, several circuits have held that they may be searched with or without reasonable suspicion pursuant to an arrest. In United States v. Thomas, 429 U.S. 282 (D.C. Cir. 2005) (a case very similar to the case now at bar), the court held that all the rooms in a small apartment including the kitchen, bedroom and living room were searchable as adjacent to the arrested area and may be searched without reasonable suspicion. In Thomas, *supra*, five deputy marshals went to the defendants apartment to arrest him as a fugitive on a parole violation. The front door of Thomas apartment opened immediately into a hallway, and a foot or two to the left was the entrance to the living and to the right were doorways off the hallway leading to the kitchen, bathroom and bedroom. The bedroom door was at the far end of the hallway approximately fifteen from the entrance to the apartment. The court found that the defendant was arrested in the hallway, and that all of the rooms including the kitchen, bedroom, and living room come off of the hallway in which he was arrested. The question presented according to the court was as follows:

"The Government does not claim the officers conducted a second type of sweep described in Buie; it points to no facts suggesting the officers had reasonable belief that a person posing a threat to them was in the apartment. The only issue therefore is whether Thomas's bedroom was a place "immediately adjoining the place of arrest from which an attack could be immediately launched."

Id. United States v. Thomas, 429 U.S. 282.  In holding that the entire apartment including the bedroom from which an attack may be launched may be searched without reasonable suspicion the court stated as follows: "Defendant's apartment is small enough that all of it immediately adjoins the place of arrest and all of it consists of a space or spaces from which an attack can be launched immediately. . . and the entire apartment is subject to a limited sweep of spaces where a person might be found". ( 429 F.2d 288.)

Thus, based on the above the undersigned concludes that Defendant's apartment in the case now at bar is remarkably similar to the apartment in Thomas, supra.  The exhibits and testimony reveal that it is a small apartment which contains two bedrooms, and a living room immediately off the hallway, where the Defendant was arrested.  Therefore, the search of areas immediately under the Defendant's control including the bedrooms and living room was lawful.

Further, in United States v. Laughter, 57 F.3d 212 (2nd Cir. 1995), the court held that the search of a room adjacent to the room where the defendant was arrested was justifiable as a search without reasonable suspicion because it held that it was in the scope of the permissible protective sweep because of the smallness of the apartment and that the agents were therefore lawfully in the backroom at the time they discovered evidence in plain view.  See also United States v. Charles, 469 F3d. 402 (5th Cir. 2006) (protective sweep of storage unit valid because immediately adjacent to the site of the arrest) Peals v. Terre Haute Police Dept., 535 F.3d 621 (7th Cir. 2008) (protective sweep of area surrounding garage where arrest occurred valid because area was immediately adjoining a place from which an attack could be launched).  Therefore because the firearms were legally seized while in plain view, they should not be suppressed.

In addition, in this case the undersigned also concludes that the officers had reasonable suspicion to support safety concerns that justified conducting the cursory search of Defendant's apartment to ensure the safety for anyone else that might have been in the house and to assure their own safety.  That was based on the threat made to the former supervisor, Defendant's mental instability, and the fully loaded firearm in plain view which the Defendant was carrying around the apartment for his protection.  In addition, a large number of firearms could be seen strewn around the apartment particularly in the living room area where Defendant was taken after he was arrested.  The fact that he was handcuffed prior to the sweep, does not lessen the danger.  See United States v. Williams, 577 F.3d 878, 882 (8th Cir. 2009).  In addition, the officers were not required to know with certainty that another individual was present before they can conduct a protective sweep.  Williams, *supra* 577 F.3rd at 880.  See also United States. v. Coleman, 700 F.3d 329 (8th Cir. 2012); United States. v. Boyd, 180 F.3d 967n(8th Cir. 1999).  Therefore, the protective sweep being lawful, on this alternative ground, the weapons should not be suppressed.

D.        Statements made by the Defendant.

The undersigned will rule on only those statements presented at the hearing on the motion to suppress.  They include (1) the Defendant's statement at the door that he did not threaten her. (2) The Defendant's statement that he was expecting the police to come to his apartment.  (3) His gratuitous comment that he allegedly made after the gun was seized from the laundry basket, that is that he brought the gun to his door for his protection, put it down and forgot it was in the basket."     Statements made in custody normally will be suppressed unless the Defendant was given and waived his Miranda rights. In the present case, as to the above three statements, they fall within an exception to this rule which is that volunteered statements should not be suppressed.

According to the record, all of the above statements were made not because of interrogation by the agents or its functional equivalent, but however were volunteered by the Defendant as statements by him.  They were not in response to any questions from the agents.  Therefore, they should not be suppressed.  See Rhode Island v. Innis, 446 U.S. 291 (1980).

## **Conclusion**

Therefore, the undersigned finds that the evidence seized from the Defendant and the statements made by Defendant should not be suppressed.

In accordance with the Memorandum above,

IT IS HEREBY RECOMMENDED that the Motion to Suppress and/or Exclude Statements and Evidence [Doc. 45] be denied.

Further, the parties are advised that they have fourteen (14) days, in which to file written objections to this recommendation and determination.  Failure to timely file objections may result in waiver of the right to appeal questions or fact.  Thompson v. Nix, 897 F.2d 357 (8th Cir. 1990).

      /s/ Terry I. Adelman  
UNITED STATES MAGISTRATE JUDGE

Dated this  27th day of August, 2014.